UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| RAICHELLE MORGAN, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> TODD FRANCIS, et al., ) <br> ) <br> Defendants. ) | Case No. 2:22-CV-17 DDN |

## MEMORANDUM AND ORDER

Self-represented Plaintiff Raichelle Morgan brings this action under 42 U.S.C. § 1983 for alleged violations of her civil rights. The matter is now before the Court upon the motion of Plaintiff for leave to proceed *in forma pauperis*, or without prepayment of the required filing fees and costs. ECF No. 3. Having reviewed the motion and the financial information submitted in support, the Court will grant the motion and assess an initial partial filing fee of $107.86. *See* 28 U.S.C. § 1915(b)(1). Furthermore, after reviewing the complaint, the Court will dismiss the complaint for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B).

### Initial Partial Filing Fee

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28

U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff is a convicted and sentenced state prisoner. ECF No. 1 at 2. In support of her motion to proceed without prepaying fees and costs, Plaintiff submitted an inmate account statement showing average monthly deposits of $539.29, over a six-month period. ECF No. 6. The Court will grant Plaintiff *in forma pauperis* status and assess an initial partial filing fee of $107.86, which is twenty percent of Plaintiff's average monthly deposit.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court may dismiss a complaint filed *in forma pauperis* if the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and it liberally construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits the claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even self-represented plaintiffs are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).

To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory

statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

### The Complaint

Plaintiff is an inmate at Women's Eastern Reception, Diagnostic & Correctional Center (WERDCC) in Vandalia, Missouri. ECF No. 1 at 2. She brings this action under 42 U.S.C. § 1983, alleging violations of her civil rights against four WERDCC employees: (1) Todd Francis (deputy warden); (2) Angela Mesmer (warden); (3) Marilyn Buss (deputy warden); and (4) Lance McAfee (functional unit manager). *Id.* at 2-4. Plaintiff brings suit against Mesmer in her official capacity only and against all other defendants in both their individual and official capacities. *Id.*

In her 'Statement of Claim,' Plaintiff states that she was attacked by fellow inmates in May 2020 and March 2021. *Id.* at 5. After both attacks, Plaintiff was placed in segregation "for defending [herself] despite being assaulted." *Id.* According to Plaintiff, she was "left in segregation due to the reckless, heedlessness, remissness, and negligence of the administration" and this caused her to be "tortured for months." *Id.* at 6. Plaintiff also notes that she was sexually harassed by a fellow inmate who she describes as a "gang member and leading drug dealer." *Id.* at 5. Finally, Plaintiff explains that these attacks have caused her to be "severely paranoid," requiring medication. *Id.* However, Plaintiff is "too afraid to walk to medline" because she feels she must stay isolated "to keep from being attacked." As such, Plaintiff has become "depressed" and she says that she lives "everyday in fear for [her] life." *Id.*

For relief, Plaintiff seeks two million dollars in damages from each named defendant for "emotional and mental distress." *Id.* at 6.  Plaintiff also requests to be "transferred out of state" because she says that she "can't be rehabilitated here." *Id.*

Plaintiff attached documents from a prison grievance filing to the complaint.[1]  In an Informal Resolution Request (IRR) dated October 2021, Plaintiff states that WERDCC is "an extremely unsafe and malicious environment" and that she "cannot focus properly on being successfully rehabilitated when housed with such malignant people." ECF No. 1-3 at 1, 3.  She complains about the actions of fellow inmates, including allegations of drug use and trafficking inside WERDCC, violence among inmates, "relationship drama" among inmates, and attempts by fellow inmates to frame her for violations she did not commit. *Id.* at 1-3, 5.  Plaintiff argues that she "should not be subjected to being housed among such negative, menacing, and violent offenders" where she has "to deal with threats and promises of acts of violence." *Id.* at 1, 3.  According to Plaintiff, everyone at WERDCC who is housed in general population lives "in fear and on edge" due to specific gang-member inmates. *Id.* at 3.  Plaintiff states that when she reported these issues to functional unit manager McAfee, he recommended Plaintiff further her education through "Ashland University," but Plaintiff states that she was denied.

Plaintiff also complains about "the lack of resources and opportunities" at WERDCC. *Id.* at 4-5.  She states that she has been incarcerated on the current state-court charge for thirteen (13) years and has six (6) years left on her sentence. *Id.* at 5.  The vocational tech courses that Plaintiff would like to take are not available until she is within five (5) years of her release date.  In addition, she does not qualify for the work release program due to her "violent offender" status.  However,

---

[1] In assessing whether a complaint sufficiently states a valid claim for relief, courts may consider materials that are attached to the complaint as exhibits. *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) (citations omitted); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

she admits that she does participate in a "regular job" at WERDCC.  According to Plaintiff, all of these circumstances amount to a lack of "new opportunities" at WERDCC.  *Id.*

For IRR relief, Plaintiff requests an out-of-state transfer (in part because she cannot go to the only other women's prison in Missouri for an unstated reason) and she seeks an assurance that she "will never be housed among this group of malignant offenders." *Id.* at 1.  Plaintiff's IRR was denied by a non-defendant who explained that she did not meet the criteria for out-of-state transfer as she "is not a security concern and has no unsigned enemy waivers." *Id.*

Because Plaintiff's IRR was unresolved through discussion, she filed an Offender Grievance stating similar complaints and arguing that she "should be provided a danger and violence free environment to pass time." ECF No. 1-5 at 1.  Plaintiff explained that she did not have any unsigned enemy waivers because if she declares an offender at WERDCC as an enemy, she will be put in protective custody ("PC") – similar custody to those who violate institutional policies and rules. *Id.* at 1-2.  Plaintiff states that she does "not need PC" because she is not in imminent danger because the "treacherous" offenders are currently in segregation. *Id.* at 2.  Plaintiff complains that one of those offenders "dropped an anonymous kite" on her to functional unit manager McAfee and it "could have" resulted in her being locked down under investigation for months or even prosecuted. *Id.*; *see also* ECF No. 1-7 at 2.  Plaintiff argues that a "permanent solution" for the gang problem at WERDCC must be found because the "group is entirely out of control." ECF No. 1-5 at 3.

In November 2021, deputy warden Francis denied Plaintiff's grievance and agreed with the IRR response. ECF No. 1-6.  Francis reiterated that Plaintiff did not meet the criteria for out-of-state transfer and pointed out that Plaintiff did have a vocational training option open to her – Professional Gardening. *Id.*

In the appeal of her grievance, Plaintiff repeats many of the same arguments, including that "WERDCC has not been a source of aid in helping" with her rehabilitation and that she has "nothing positive to do with [her] time." ECF No. 1-7 at 1-2. Plaintiff explains that she has not declared certain inmates as enemies because she does not want restrictions on her freedom that result from WERDCC not having "a designated protective custody unit." *Id.* at 3. She also complains about the lack of "honor dorms" at WERDCC – for inmates who are violation fee and who want to stay out of trouble. *Id.* at 4. She describes her life at WERDCC as "emotionally draining," resulting in paranoia. *Id.* Plaintiff's grievance appeal was summarily denied by a non-defendant in December 2021. ECF No. 1-8 at 1.

## Discussion

Prisoner Plaintiff requests money damages and transfer to an out-of-state institution. To the extent Plaintiff seeks prison transfer, such relief is unavailable here as Plaintiff has no constitutional right to choose her prison placement. As for Plaintiff's request for money damages, Plaintiff fails to allege that any of the named defendants violated her constitutionally protected rights. Although Plaintiff has a right to reasonable safety while imprisoned, she asserts no personal involvement by any defendant in causing her harm, and she has chosen not to take steps to increase her security at WERDCC. Under the Prison Litigation Reform Act, Plaintiff has no right to money damages resulting from mental and emotional distress. For all of these reasons, Plaintiff's complaint must be dismissed for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B).

### I.     Transfer to Out-of-State Institution Unavailable

Plaintiff's request for transfer to an out-of-state institution is unavailable relief in this matter, even if her underlying claims were otherwise meritorious. Plaintiff is a Missouri Department of Corrections (MDOC) inmate. Under Missouri law, any individual subject to

confinement in a state adult penal or correctional institution shall be committed to the MDOC and not to any particular institution.

Broad discretionary authority must be afforded to prison administrators because the administration of a prison is "at best an extraordinarily difficult undertaking." *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974). "Transfer within the prison, or to another prison, is within the discretion of prison officials." *Lyon v. Farrier*, 727 F.2d 766, 768 (8th Cir. 1984) (internal citations omitted); *see also Allen v. Purkett*, 5 F.3d 1151, 1153 (8th Cir. 1993) (stating that prisoner plaintiffs "had no right … to be housed in a certain barrack or housing unit, or with certain inmates"). According to the United States Supreme Court, "[t]he Constitution does not … guarantee that [a] convicted prisoner will be placed in any particular prison." *Meachum v. Fano*, 427 U.S. 215, 224 (1976).

Prisoners simply do not have a constitutionally derived liberty interest in being held in a specific institution. *Id.*; *Olim v. Wakinekona*, 461 U.S. 238, 244-45 (1983); *Murphy v. Mo. Dep't of Corr.*, 769 F.2d 502, 503 (8th Cir. 1985) (stating that "a prisoner enjoys no constitutional right to remain in a particular institution"); *Cooper v. State*, 818 S.W.2d 653, 655 (Mo. Ct. App. W.D. 1991). "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum*, 427 U.S. at 224.

Plaintiff has no constitutional liberty interest in being transferred to a different prison facility. As such, to the extent Plaintiff seeks prison transfer, such relief is not available here and her claims fail to state a claim upon which relief may be granted.

## II.     No Alleged Constitutional Violations by Named Defendants

As for Plaintiff's claims for money damages, Plaintiff alleges that WERDCC is a dangerous place where she cannot focus on her own rehabilitation and where the opportunities to

fill her time are limited. There is no doubt that prisons can be dangerous places. However, governmental officials are personally liable only for their own misconduct. *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). Defendants Mesmer and Buss must be dismissed because there are no allegations of constitutional harm by them against Plaintiff. As to defendants Francis and McAfee, Plaintiff does not allege that they were personally involved in or directly responsible for any harm she has suffered. The only physical injuries alleged by Plaintiff were caused by other inmates – who are not state actors – without any involvement by named defendants. Even if Plaintiff had adequately alleged a constitutional harm against defendants, she cannot recover for emotional and mental distress under the PLRA. Plaintiff's claims must be dismissed for failure to state a claim.

### A. Defendants Mesmer and Buss

Defendants Mesmer and Buss are not mentioned at all in the accusations of the complaint or attachments. "Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (to be cognizable under § 1983, a claim must allege that the defendant was personally involved in or directly responsible for the incidents that deprived the plaintiff of his constitutional rights). It is not enough that these named defendants have general responsibility at WERDCC as administrators. "[A] warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement." *Reynolds v. Dormire,* 636 F.3d 976, 981 (8th Cir. 2011) (quoting *Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir. 1987) (per curiam)).

Because Plaintiff fails to make any specific accusations against defendants Mesmer and Buss, they must be dismissed. *See also Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003)

(affirming dismissal of *pro se* complaint against defendants who were merely listed as defendants in the complaint and there were no allegations of constitutional harm against them).

### B. Defendants McAfee and Francis

In her grievance exhibits, Plaintiff alleges that functional unit manager McAfee advised her to attend university classes and that he dealt with false accusations against her by a fellow inmate that "could have" resulted in punishment. Deputy warden Francis denied Plaintiff's grievance relating to her many complaints about the prison environment and lack of opportunities available at WERDCC. It is unclear exactly what constitutional harm Plaintiff alleges against these defendants. Liberally construing possible claims from the pleadings, the Court finds insufficient allegations of harm to withstand review.

First, Plaintiff alleges that she has been attacked by other inmates and put in segregation when she defended herself. To the extent Plaintiff is arguing the unconstitutionality of the WERDCC policy for handling fights between inmates, such a claim fails. "Although prisoners retain their constitutional rights, limitations may be placed on those rights in light of the needs of the penal system." *Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 982 (8th Cir. 2004). Deference should be given to the decisions of prison administrators, especially when those decisions deal with issues of prison safety and security. *Turner v. Safley*, 482 U.S. 78, 89 (1987); *see also Sandin v. Connor*, 515 U.S. 472, 482 (1995) (stating that "federal courts ought to afford appropriate deference and flexibility to state [prison] officials trying to manage a volatile environment"); *Spence v. Farrier*, 807 F.2d 753, 755 (8th Cir. 1986) (stating that "prison administrators are accorded 'wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979))).

Plaintiff admits to fighting back in these alleged incidents and the Court affords deference to the WERDCC policy to segregate both parties involved in a physical altercation. Such separation is reasonably related to maintaining safety and security. Plaintiff's allegations state no harm that rises to the level of a constitutional violation.

Second, the only physical harm that Plaintiff describes in her complaint involves injuries resulting from assaults by fellow inmates.[2] These fellow inmates are not state actors and therefore, cannot be held liable under § 1983. *See Carlson v. Roetzel & Andress*, 552 F.3d 648, 650 (8th Cir. 2008); *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975 (8th Cir. 1993) (stating that § 1983 secures constitutional rights from government infringement, not infringement by private parties).

Plaintiff does not allege that any of the named defendants failed to protect or intervene in these assaults. Plaintiff does not even allege that any of the defendants were present when the assaults occurred. Further, Plaintiff only demands money damages from defendants for "emotional and mental distress." ECF No. 1 at 6. As such, Plaintiff's complaint fails to state an actionable claim under the Prison Litigation Reform Act ("PLRA") for compensatory damages.

The PLRA states: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e); *see also McAdoo v. Martin*, 899 F.3d 521, 525 (8th Cir. 2018) ("We interpret the PLRA to require more than a de minimis physical injury."). Because Plaintiff does not blame defendants for any physical injury – only emotional harm – the PLRA bars recovery of compensatory damages in this action.

---

[2] Plaintiff states that she suffered an eye injury as a result of an altercation with a fellow inmate and that she "was refused medical treatment." ECF No. 1 at 5. Plaintiff does not state who refused her treatment and there is no other mention of a denial of medical services in the complaint or attachments. This single statement is not enough to state a claim of deliberately indifferent medical care. *See Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019) (To prevail on an Eighth Amendment claim of deliberate indifference, a plaintiff must prove that she suffered from an objectively serious medical need and that prison officials actually knew of and deliberately disregarded that need.).

Finally, to the extent Plaintiff alleges that defendants have generally failed in their constitutional duties to her as a prisoner of the State, Plaintiff's allegations are insufficient to support such a claim.  The State has no duty to provide Plaintiff with opportunities to fill her time while imprisoned.  The State's duties to Plaintiff involve her basic needs.  As the Supreme Court explained in *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989): "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being" including providing "for his basic human needs – *e.g.,* food, clothing, shelter, medical care, and reasonable safety."  *Id.* at 199-200.  Although Plaintiff has a right to 'reasonable safety' while imprisoned, "prisons are inherently dangerous environments." *Vandevender v. Sass*, 970 F.3d 972, 976 (8th Cir. 2020).

Plaintiff alleges that WERDCC is out of control due to dangerous gang-member inmates and she asserts that she lives in fear.  However, prison gangs are nothing new to MDOC.  Over thirty years ago, in 1987, the United States Supreme Court decided a case that involved the constitutionality of a MDOC regulation on prisoner correspondence that was partially put in place as a means of restricting communications among gang members.  *See Turner*, 482 U.S. at 91.  The Court upheld the MDOC regulation as reasonably related to valid security goals of the correctional system.  *Id.* at 93.  The Court discussed how MDOC used certain strategies to try to limit prison gang activity, including the use of protective custody for certain inmates.  *Id.* at 91.

In this case, Plaintiff admits that if she signed enemy waivers, she could be placed in protective custody at WERDCC.  She states that she does not need protective custody and that protective custody is too restrictive.  However, as discussed by the Supreme Court, prisons are allowed to put reasonable restrictions on prisoners in the interest of safety and security.  WERDCC has provided an avenue by which Plaintiff could seek greater safety for herself if she feels she is

in danger, but Plaintiff has admittedly refused to do so. Overall, there is no evidence to suggest that any WERDCC defendant has violated any of Plaintiff's constitutional rights.

## Conclusion

Although Plaintiff has a constitutional right to reasonable safety while imprisoned, the allegations of her pleadings fail to assert that the named defendants were personally involved in or directly responsible for any alleged violation of that right. Further, Plaintiff has no right to money damages for emotional and mental distress under the PLRA, and the relief of out-of-state transfer is not available. As such, Plaintiff's complaint will be dismissed under 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim, and her pending motion for appointment of counsel (ECF No. 2) will be denied as moot.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for leave to proceed *in forma pauperis* [ECF No. 3] is **GRANTED.** *See* 28 U.S.C. § 1915(a)(1).

**IT IS FURTHER ORDERED** that the Plaintiff shall pay an initial filing fee of $107.86 within **thirty (30) days** of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that the Clerk shall **not** issue process or cause process to issue upon the complaint as to defendants Todd Francis, Angela Mesmer, Marilyn Buss, and Lance McAfee because the complaint fails to state a claim upon which relief can be granted. Plaintiff's claims against all defendants are **DISMISSED without prejudice**. *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS FINALLY ORDERED** that Plaintiff's motion for appointment of counsel [ECF No. 2] is **DENIED as moot**.

**IT IS HEREBY CERTIFIED** that an appeal from this dismissal would not be taken in good faith.

An Order of Dismissal will accompany this Memorandum and Order.

Dated this 30th day of June, 2022.

                                             *E. Richard Webber*
                                             E. RICHARD WEBBER
                                             SENIOR UNITED STATES DISTRICT JUDGE